IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES,

    **Plaintiff,**

           **v.**                   **Criminal No.** 20-271 (FAB)

CARLOS BOYRIE-LABOY [3],

    **Defendant.**

OPINION AND ORDER

BESOSA, District Judge.

    Before the Court are four motions *in limine*.  (Docket Nos. 254 & 255.)  First, the United States moves to preclude defendant Carlos Boyrie-Laboy ("Boyrie") from defining "reasonable doubt" during closing argument.  (Docket No. 255.)  Second, the United States argues that evidence pertaining to "punishment or the effects of conviction" is inadmissible.  <u>Id.</u>  Third, the United States moves to exclude self-serving statements pursuant to Federal Rule of Evidence 801(d)(2)(A).  <u>Id.</u>  Fourth, the United States seeks to admit evidence of prior, concurrent, and subsequent bad acts.  (Docket No. 254.)  For the reasons set forth below, the motions *in limine* are **GRANTED**.

I.   **Background**

    This criminal action concerns purported abuses of power by defendants Miguel Conde-Vellón ("Conde"), Luís Rodríguez-García

("Rodríguez"), Boyrie, and Quermie Márquez-Rivera ("Márquez"). (Docket No. 1.)  Conde attained the rank of sergeant in the Puerto Rico Police Department ("PRPD").  Id. at p. 1.  Boyrie, Rodríguez, and Márquez are former PRPD officers.  Id.

**A. The December 29, 2016 Robbery**

Rodríguez and an unnamed PRPD officer met with each other on December 13, 2016.  Id. at p. 4.  During this meeting, they planned the robbery of a house containing illegal pyrotechnics. Id.  Unbeknownst to Rodríguez, the unnamed PRPD officer and the resident of the stash house were confidential human sources for the Federal Bureau of Investigation ("FBI") (CHS-1 and CHS-2, respectively).  Id.  Subsequently, Conde, Boyrie, and Rodríguez repeatedly communicated with CHS-1 to coordinate the pyrotechnics robbery.  Id.

On December 29, 2016, Conde, Boyrie, and Rodríguez met in Fajardo, Puerto Rico "with the intention of driving . . . to the house where they believed CHS-2 was illegally selling pyrotechnics." Id. at p. 5.  Conde instructed Boyrie and Rodríguez to display their PRPD identifications.  Id.  Later that day, Conde, Boyrie, and Rodríguez "made an unauthorized, forced entry into a residence" located in Naguabo, Puerto Rico.  Id.  They ransacked the stash house, stealing 80 pieces of generic fireworks, 106 pieces of Thunder Max fireworks, 18 pieces of FWK fireworks, and

$2,995.00 United States currency.  Id.  This property belonged to the United States, however, "with a combined value in excess of $1,000."  Id.   During the robbery, Conde, Boyrie, and Rodríguez possessed firearms to "intimidate and facilitate their unauthorized taking of cash and property."  Id. at p. 6.  Conde, Boyrie, and Rodríguez divided the $2,995.00 among themselves and CHS-1.  Id.

**B. The June 15, 2017 Robbery**

On February 15, 2017, Rodríguez and CHS-1 discussed the robbery of an individual "believed to be illegally selling electronic equipment from a house."  Id. at p. 10.  Conde, Rodríguez, Boyrie, and Márquez met with CHS-1 throughout the following months to discuss this criminal endeavor.  Id. at pp. 10-11.

The defendants reconvened in Yabucoa, Puerto Rico on June 15, 2017.  Id. at p. 12.  They then traveled to a residence "utilized by the purported seller of stolen electronic equipment."  Id. Conde, Rodríguez, Boyrie, and Márquez allegedly stole two Samsung tablets and $6,350.00 United States currency.  Id.  The tablets and cash belonged to the United States.  Id.  After the defendants divided the proceeds among themselves and CHS-1, they falsely claimed that $2,995.00 and the tablets were recovered from the Calabaza Ward in Yabucoa, Puerto Rico.  Id. at p. 13.

### C. Commencement of the Criminal Action

A grand jury returned a six-count indictment on August 27, 2020. (Docket No. 3.) Counts one through three pertain to the February 15, 2017 robbery, charging Conde, Rodríguez, and Boyrie with conspiracy to commit robbery, conspiracy to steal or convert government property, and theft of government property, in violation of 18 U.S.C sections 1951, 371, and 541, respectively. Id. at pp. 1-7. Counts four through six allege that Conde, Rodríguez, Boyrie, and Márquez conspired to commit robbery, conspired to steal government property, and stole government property by participating in the June 15, 2017 robbery in violation of 18 U.S.C sections 1951, 371, and 541, respectively. Id. at pp. 7—14.

Márquez, Rodríguez, and Conde pled guilty. (Docket Nos. 130, 134 & 143.) Conde and Rodríguez each received a sentence of twenty-four months imprisonment as to each count, to be served concurrently. (Docket Nos. 217 & 226.) Márquez's sentencing hearing is continued *sine die*. (Docket No. 247.) Boyrie's trial commenced on November 29, 2021. (Docket No. 256.) The United States filed four motions *in limine*. (Docket Nos. 254 & 255.) Boyrie responded. (Docket Nos. 257 & 258.)

## II. The Motion to Preclude Boyrie from Defining "Reasonable Doubt"

The United States requests that the Court prohibit Boyrie from defining "reasonable doubt" during closing argument. (Docket No. 255 at p. 1.)   This Court possesses "wide discretion in fashioning instructions" to "provide the jury with a clear and succinct statement of the law." 9 Bender's Fed. Practice Forms (2021); Kelly v. Airborne Freight Corp., 140 F.3d 335, 352 (1st Cir. 1996) (noting that the First Circuit Court of Appeals "customarily cede[s] wide distraction to the trial courts to fashion jury instructions as they see fit"); see Fed. R. Crim P. 51(b) ("The court . . . may instruct the jury at any time before the jury is discharged.").

The phrase "'reasonable doubt' does not require definition." United States v. Wallace, 461 F.3d 15, 30 (1st Cir. 2006); Victor v. Nebraska, 511 U.S. 1, 5 (1994) ("[The] Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course."). In fact, "most efforts at clarification result in further obfuscation of the concept." United States v. Frabizio, 459 F.3d 80, 97 (1st Cir. 2006). Accordingly, Boyrie is precluded from defining "reasonable doubt" during closing argument.   Cf United States v. Ademaj, 170 F.3d 58, 66 (1st Cir. 1999) ("The district court acted properly in precluding counsel from arguing that the jury should equate

'reasonable doubt' with 'an abiding conviction to a moral certainty.'"). Boyrie may, however, argue that the United States has failed to satisfy its burden of proof beyond a reasonable doubt.

### III. The Motion to Exclude Evidence of Punishment

The United States seeks to exclude "any evidence or argument relating to possible punishment upon, or collateral consequences of, conviction." (Docket No. 255 at p. 5.) The Supreme Court has held that "when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." Shannon v. United States, 512 U.S. 573, 579 (1994); see United States v. Merlino, 592 F.3d 22, 30 n.4 (1st Cir. 2010) ("The length of the resulting sentence that attached to the conviction is not relevant to the determination of whether there was sufficient evidence to support the conviction itself."). In accordance with authoritative precedent, evidence of or reference to potential punishment and collateral consequences of conviction is prohibited.

### IV. The Motion to Exclude Self-Serving Statements

The United States moves to preclude Boyrie from eliciting self-serving statements at trial. (Docket No. 255 at p. 5.) Federal Rule of Evidence 801 prohibits hearsay. Fed. R. Evid. 801. Hearsay is an out-of-court statement offered "in evidence to

prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).  The Rules of Evidence set forth exemptions and exceptions to the hearsay prohibition.  See, e.g., Fed. R. Evid. 801(d)(2) (setting forth exemptions to hearsay); Fed. R. Evid. 803 (listing exceptions to hearsay).  There is neither an exemption nor exception, however, for purely self-serving hearsay.  See United States v. Rivera-Hernández, 497 F.3d 71, 82 n.5 (1st Cir. 2007)  ("To be received in evidence an admission . . . must be contrary to that party's position at the time of the trial.") (internal citation omitted); United States v. Palow, 777 F.2d 52, 56 (1st Cir. 1985) (holding that Rule 801(d)(2)(A) was "designed to exclude the introduction of self-serving statements by the party making them"). Accordingly, Boyrie is prohibited from eliciting self-serving statements at trial.

## V.    The Motion to Admit Evidence of Prior, Contemporaneous and Subsequent Bad Acts

According to the United States, Boyrie and "some of the codefendants" participated in five "**other** robberies and conspiracies to commit robbery."   (Docket No. 254 at p. 2) (emphasis added).  Two of the additional conspiracies occurred on December 21, 2015, and December 29, 2015, before the offenses charged in the indictment.  Id.  The third and fourth conspiracies occurred on December 29, 2016, and on April 26, 2017, respectively. These dates overlap with the conspiracies set forth in the

indictment.  Id.   The fifth conspiracy occurred on December 19, 2017, six months after counts four through six.  Id.

The "other" conspiracies resemble the offenses charged in the indictment.  The defendants "[worked] with the FBI [undercover agent] and together conspired to steal or stole property and money from civilians under color of law."  Id.

The United States contends that it is "entitled to present evidence that [Boyrie] committed other robberies and participated in other conspiracies to commit robbery as a police officer."  Id. at p. 4.  It intends to elicit testimony from "witnesses who participated in the other robberies and conspiracies with [Boyrie] in the years 2015, 2016 and 2017 and who also participated in the conspiracies and robberies charged in the indictment in 2016 and 2017."  Id. at p. 4.  Despite this unambiguous statement, Boyrie implies that the United States is requesting to admit 14 hours of audio recordings.  (Docket No. 258 at pp. 1-2.)  Because the United States seeks to adduce testimonial evidence, the Court need not address the admissibility of audio recordings.

The Court now addresses a more difficult inquiry.  The United States distinguishes the "other" conspiracies and robberies from those alleged in the indictment.  (Docket No. 254 at p. 2.)   It is not apparent, however, whether these "other" incidents were part and parcel of a different course of conduct from that alleged

in the indictment.  In fact, the Court is perplexed as to why the United States drew this distinction, and perhaps the evidence at trial will provide clarity.

As it stands, the Court is persuaded that the limited testimony the United States seeks to elicit is intrinsic to this criminal action.  "An act is intrinsic to a charged offense if the act is inextricably intertwined with the charged offense, when both acts are part of a single criminal episode, or when the other acts were necessary preliminaries to the crime charged."  2 Weinstein's Federal Evidence § 404.20 (2021).  As presented, the conspiracies are, in fact, intrinsic to the charged offenses because they establish Boyrie's "affiliation with the co-defendants."  (Docket No. 254 at p. 4.)  The Court will, thus, permit the United States to elicit testimony of additional robberies that Boyrie and the other defendants committed together. The United States does not, however, have free reign to adduce the minutiae of these events.  The Court reserves the authority to limit this testimony pursuant to Federal Rule of Evidence 403.

### A. Federal Rule of Evidence 404(b) is Inapplicable

Federal Rule of Evidence 404(b) ("Rule 404(b)") prohibits the admission of prior bad acts to establish an individual's character or propensity to commit a crime.  Fed. R. Evid. 404(b). This prohibition is inapplicable, however, if the evidence

"concerns [a matter] intrinsic to the crime charged." United States v. Robles-Álvarez, 847 F.3d 46, 51 (1st Cir. 2017) (affirming the admission of evidence not referred to in the indictment because it provided a "necessary description of the events leading up to the charged crime") (quotation omitted) (citing United States v. Green, 617 F.3d 233, 247 (3d Cir. 2010) (holding that prior bad act evidence is admissible to "[allow] the jury to understand the circumstances surrounding the charged crime")). Indeed, the First Circuit Court of Appeals has "repeatedly held that, in a conspiracy case, evidence of other bad acts can be admitted to explain the background, formation, and development of the illegal relationship, and, more specifically, to help the jury understand the basis for the co-conspirators' relationship of mutual trust." United States v. Green, 698 F.3d 48, 55 (1st Cir. 2012) (citation omitted). Moreover, intrinsic evidence need not coincide with the timeframe of the charged offense to fall within the Rule 404(b) exemption. See United States v. Balthazard, 360 F.3d 309, 317 (1st Cir. 2004) (affirming the admission of evidence regarding a drug transaction "even if the [defendant] was not a member of the conspiracy when he received the marijuana"). Accordingly, evidence that Boyrie participated in similar conspiracies to commit robbery is admissible.

Criminal No. 20-271 (FAB)                                                    11

## VI.   Conclusion

For the reasons set forth above, the United States' motions *in limine* are **GRANTED.**   (Docket Nos. 254 & 255.)   Boyrie **SHALL NOT** define "reasonable doubt" during closing argument, adduce evidence pertaining to "punishment or the effects of conviction," or elicit self-serving statements.   Boyrie may, however, argue that the United States has failed to prove that he committed the charged offenses beyond a reasonable doubt.   Evidence that Boyrie participated in similar conspiracies to commit robbery before, during, and after the offenses charged in the indictment is admissible and subject to limitation by the Court within the context of trial.


**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 1, 2021.


                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE